IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
DEC 1 3 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:22 CR 696 |
| NAJEEB KHAN, | ) | Title 18, United States Code, Section 1344; Title 26, United States Code, Section 7201 |
| Defendant. | ) | |

JUDGE BARKER

## GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

### Defendant, IOI, and the Victim Banks

1. Defendant NAJEEB KHAN was a resident of Edwardsburg, Michigan.

2. From in or around 2002, until in or around July 2019, Defendant owned and operated Interlogic Outsourcing, Inc. ("IOI"), a payroll processing company that, at one point, provided services to approximately 6,000 businesses.

3. Beginning in or around 2014, Defendant operated a check-kiting scheme utilizing various business checking accounts at multiple banks, including Lake City Bank, KeyBank, and Berkshire Bank (the "Accounts").

4. Lake City Bank, KeyBank, and Berkshire Bank were financial institutions as defined under Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation.

5. KeyBank was headquartered in the Northern District of Ohio.

The Scheme to Defraud the Victim Banks

6. From in or around 2014, until on or about July 8, 2019, in the Northern District of Ohio, and elsewhere, Defendant did knowingly, and with the intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to defraud financial institutions, which scheme and artifice employed material falsehoods, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of, financial institutions, by means of materially false and fraudulent pretenses, representations, and promises relating to a material fact, that is, engaged in check-kiting, obtaining funds from victim financial institutions using a long-running cycle of checks issued without sufficient funds, but with later-issued checks and wires used to establish the balance to support earlier-issued checks and provide additional funds for Defendant's benefit, without ever having sufficient funds to support the checks issued.

7. Defendant timed the deposit of physical checks to exploit the instant availability of the deposited funds granted by the banks, knowing that cashed checks that were not backed by money in the account were considered uncollected funds and the banks charged Defendant a fee to carry that uncollected balance.

8. To execute the check-kiting scheme, from in or around 2014, until on or about July 8, 2019, Defendant wrote checks from IOI accounts at Lake City Bank for deposit into IOI accounts at KeyBank, and then wrote checks from IOI accounts at Berkshire Bank for deposit into IOI accounts at Lake City Bank. To cover the amount of the checks from Berkshire Bank, Defendant wired funds from IOI accounts at KeyBank to IOI accounts at Berkshire Bank. As

Defendant needed money for business and personal expenses, he moved money from the check kite to other business and personal accounts.

9. Defendant increased the amount of money being rotated through the Accounts to cover the expenses of the scheme and to convert funds to his benefit, transferring funds out of the Accounts used in the scheme to his own personal accounts and to other business accounts.

10. Defendant used money from the scheme to financially support the growth of his payroll processing business.

11. Defendant used money from the scheme to help fund his lifestyle, including the purchase of millions of dollars of automobiles, aircraft, and vacation homes.

12. On or about July 8, 2019, Defendant self-disclosed the fraudulent check-kiting scheme to at least two banks and to federal law enforcement, which resulted in the termination of the scheme and the brunt of the financial loss falling on KeyBank, and some of IOI's customers.

## COUNT 1
(Bank Fraud, 18 U.S.C. § 1344)

The First Assistant United States Attorney charges:

13. The factual allegations in paragraphs 1 through 12 are realleged and incorporated as if fully stated herein.

14. From in or around 2014, until on or about July 8, 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant NAJEEB KHAN did execute, and attempt to execute, and cause the execution of, the above-described scheme and artifice to defraud KeyBank, to obtain money under the custody and control of KeyBank by means of false and fraudulent pretenses, representations, and promises, by issuing numerous fraudulent checks for deposit at KeyBank, knowing the checks were not supported by sufficient funds, in violation of Title 18, United States Code, Section 1344.

## COUNT 2
(Attempted Tax Evasion, 26 U.S.C. § 7201)

The First Assistant United States Attorney further charges:

15. The factual allegations in paragraphs 1 through 12 are realleged and incorporated as if fully stated herein.

16. From in or around January 2014, through in or around October 2018, in the Northern District of Indiana, Defendant NAJEEB KHAN, a resident of Edwardsburg, Michigan, willfully attempted to evade and defeat income tax due and owing by him and his spouse to the United States of America, for the following calendar years, by causing to be prepared, and by signing and causing to be signed, a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, on behalf of himself and his spouse, each of which was submitted to the Internal Revenue Service on or about the following filing dates. On those tax returns, because Defendant concealed from his return preparer the check-kiting income and documented stolen funds as shareholder debt in IOI records, Defendant caused to be reported that his and his spouse's joint taxable income for each calendar year was the following amounts. In fact, as Defendant then and there knew, Defendant and his spouse had joint taxable income for each year that was substantially greater than the amount reported on the return, and as a result of such taxable income, there was substantial additional tax due and owing to the United States of America, as follows:

| Year | Filing Date | Reported Taxable Income | Reported Liability | Corrected Income | Corrected Tax Liability | Additional Tax Due & Owing |
|---|---|---|---|---|---|---|
| 2014 | October 14, 2015 | $282,311 | $85,261 | $4,972,318 | $1,923,220 | $1,837,959 |
| 2015 | October 14, 2016 | $0 | $3,069 | $3,234,893 | $1,122,985 | $1,119,916 |
| 2016 | October 15, 2017 | $0 | $3,399 | $8,692,858 | $3,312,772 | $3,309,373 |
| 2017 | October 15, 2018 | $0 | $3,305 | $2,703,873 | $869,381 | $866,076 |

All in violation of Title 26, United States Code, Section 7201.

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By: _Michael L. Collyer_
Michael L. Collyer
Chief, White Collar Crime Unit

5