IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:22CR696 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| NAJEEB KHAN, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned counsel, respectfully
submits this memorandum setting forth the United States' position regarding the sentencing of
Defendant Najeeb Khan.  For the reasons set forth below and those to be articulated at the
sentencing hearing, the United States respectfully requests that the Court sentence Defendant
Najeeb Khan to a term of imprisonment within the range specified by the Sentencing Guidelines
and order the payment of restitution to his victims.

## THE UNITED STATES SENTENCING GUIDELINES

A.  Offense Level Computation

When fashioning an appropriate sentence for a defendant, a court must first consider the
applicable guidelines range under 18 U.S.C. § 3553(a)(4).  *United States v. Thompson*, 515 F.3d
556, 560 (6th Cir. 2008).  Although the sentencing guidelines are advisory, they are the "starting
point and the initial benchmark" for federal sentencing.  *Id.* at 560-61.  A court may find facts by
a preponderance of the evidence when calculating the appropriate guidelines range.  United
*States v. Gates*, 461 F.3d 703, 707-08 (6th Cir. 2006).  Once a court has determined the

appropriate sentencing range, it should then consider that range in light of the other relevant §

3553(a) factors. *Thompson*, 515 F.3d at 561.

Khan pled guilty to one count of bank fraud and one count of attempted tax evasion, each

offense requiring a separate offense level calculation. With respect to the bank fraud offense, the

Probation Office correctly started Khan's guidelines calculation at a base offense level of 7,

pursuant to U.S.S.G § 2B1.1. (R. 25: Final Presentence Investigation Report ("PSR") at ¶ 20,

PageID 170). An additional 24 levels were correctly added to the Defendant's base offense level

because the loss amount was between $65,000,000 and $150,000,000, pursuant to U.S.S.G §

2B1.1(b)(1)(M). (*Id.* at ¶ 21). The Probation Office also added two levels because Khan's

offense involved more than 10 victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i). (*Id.* at ¶ 22).

The Parties agreed not to apply this specific offense characteristic for reasons that are addressed

below. Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), two levels are properly added to the offense

level due to the sophisticated means Khan used to execute and conceal the offense. (*Id.* at ¶ 23).

Finally, the Probation Office correctly added two levels because Khan derived more than

$1,000,000 in gross receipts from KeyBank. U.S.S.G. § 2B1.1(b)(17)(A); (*id.* at ¶ 24). As

calculated by the Probation Office, the adjusted offense level for Khan's bank fraud offense is

37. (R. 25: Final PSR at ¶ 28, PageID 170).

The offense level calculation for the tax offense is correctly calculated as 26. (*Id.* at ¶ 34,

PageID 171). Pursuant to U.S.S.G. §2T1.1(a)(1)(J), the base offense level is 24 because the total

tax loss for tax years 2014, 2015, 2016, and 2017 was $7,133,324. (*Id.* at ¶ 29, PageID 170).

Two levels were correctly added because the Defendant failed to report the income he generated

from his criminal activity, which exceeded $10,000 in each tax year. U.S.S.G. § 2T1.1(b)(1);

(*Id.* at ¶ 30).  Because there are more than nine levels between the two adjusted offense levels, no additional levels are added to the highest offense level.  U.S.S.G. § 3D1.4(c); (*Id.* at ¶¶ 35, 38).

Next, the Probation Office considered the provisions of U.S.S.G. § 3E1.1, and correctly adjusted Khan's offense down three levels because Khan has clearly demonstrated acceptance of responsibility for the offense.  (*Id.* at ¶¶ 40-41). Thus, according to the Probation Office, the total offense level applicable in this case is 34.  After accounting for Khan's lack of criminal history, the guidelines recommend a sentence of 151 to 188 months of incarceration as the appropriate starting point in fashioning a sentence that is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

As noted in the PSR, the Parties stipulated to a guidelines calculation that did not include the additional two-level specific offense characteristic for 10 or more victims.  Unraveling the complex transactions between the banks when the scheme ended to determine and trace each victim's specific losses would have resulted in an unreasonable delay in prosecuting this case. Instead, the government consulted with KeyBank and worked with the Liquidating Trust and its Trustee to ensure that the more than 1,700 former-IOI clients and beneficiaries of the Trust, who suffered financial losses were included as victims entitled to criminal restitution in this matter. Khan's agreement to include the claims in the loss amount and to include the losses in the criminal restitution order allowed the government to bring this action sooner than it otherwise could have if it had to show proximate causation for all of the victims' losses.  As such, the Parties stipulated guidelines calculation results in a total offense level of 32 and guidelines imprisonment range of 121-151 months.

Finally, the government does not agree with Defendant's assertion in Objection #7 to the PSR regarding the reason the government agreed to stipulate the specific offense characteristic

3

did not apply. The investigation showed a significant shortfall of approximately $24.5 million in the IOI-tax account by July 8, 2019, and that KeyBank used its own funds to cover part of the shortfall thereby reducing the financial impact on IOI's clients. The government does not agree with the proposition that the victim enhancement does not apply because enough money existed in other accounts at other banks that could have covered most IOI-client tax obligations.

B.  Proposed U.S.S.G. § 4C1.1

       *1.  Amended Guideline*

Recently, the United States Sentencing Commission promulgated proposed amendments to the Sentencing Guidelines Manual that, among other changes, provide for an additional two-level downward adjustment for certain zero-point offenders. (U.S.S.G. § 4C1.1 (proposed)). In the absence of Congressional action to the contrary, this guideline will go into effect on November 1, 2023. Therefore, this Court should consider the applicability of the § 4C1.1 adjustment assuming implementation of the amendments on November 1.

       *2.  Defendant is ineligible to receive the benefit of 4C1.1 because he personally caused substantial financial hardship.*

Although the Court should consider the applicability of proposed § 4C1.1, the Court should nevertheless make a finding that it does not apply when determining Defendant's total offense level. Proposed § 4C1.1 provides for a two-level reduction in offense level provided defendant has zero criminal history points **and** meets a list of other criteria, one of which is that "the defendant did not personally cause substantial financial hardship." U.S.S.G. § 4C1.1(a)(6) (proposed). The proposed guideline goes on to state that "[i]n determining whether the defendant's acts or omissions resulted in "substantial financial hardship" to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to §2B1.1" (U.S.S.G. § 4C1.1(b)(3) (proposed)). The Application

Notes also indicate that "the application of subsection (a)(6) is to be determined independently of the application of subsection (b)(2) of § 2B1.1" (U.S.S.G. § 4C1.1, App. N. 1).

Based on the above, Defendant is ineligible for the adjustment under proposed U.S.S.G. § 4C1.1. The Probation Officer correctly noted in the PSR that a crime resulting in a loss of over $149 million caused a substantial financial hardship on KeyBank and some of the IOI clients. (R. 25: Final PSR at PageID 188). A review of the victim impact statements submitted in this case detail those hardships and make clear that this Defendant is not the kind of first-time offender deserving of a downward adjustment. The harm detailed in the victims' statements and those that will be made at the sentencing hearing should be sufficient for this Court to determine that Defendant personally caused substantial financial hardship and make a finding that the two-level downward adjustment under proposed U.S.S.G. § 4C1.1 does not apply in this case.

C. U.S.S.G. § 5K2.16

The Sentencing Guidelines recognize that our system of justice ought to encourage, and in some cases, reward offenders that voluntarily disclose their criminal conduct with lower sentences. Section 5K2.16 provides that a sentencing court may depart downward from the recommended guidelines range in certain circumstances. Cases in which a defendant's disclosure is motivated by exemplary character warrant the most credit from the court.

Unfortunately, this is not a case where disclosure because of exemplary character. Najeeb Khan voluntarily disclosed his long-running scheme to KeyBank and law enforcement not because of his exemplary character, or his desire to stop committing criminal acts on a near daily basis, or because he was tired of living his lavish lifestyle paid for by fraud, or because he wanted to set the right example for his daughter and the kids he helped that looked up to him. He did it because of fear. In his own words, fear caused by "a personal health scare caused [him] to

reflect on [his] own mortality, and the impact the unraveling of the kite would have on [his] family. . . ." (R. 25: Final PSR at ¶ 18, PageID 168).

Of course, this does not mean that the Defendant deserves *no* credit for his disclosure. The Defendant's decision to deal with the consequences of his actions now, rather than when he was caught or when he could no longer orchestrate and direct the daily deposit of hundreds of checks and other transactions that effected the kite, was brave; but his decision was not motivated by exemplary character or remorse—he wanted to protect his family. To his credit, the Defendant was cooperative with the federal investigators. He agreed to multiple interviews, described how he committed the fraud, confirmed that he used the proceeds to fund his own lavish lifestyle, and helped narrow the issues that needed to be resolved by the investigation.

In determining how much credit the Defendant should receive for his self-disclosure, the Court should consider the Guidelines inadequacy at capturing the damage caused by the staggering amount of loss in this case. This Defendant caused over almost 2,000 victims to lose nearly $150,000,000. The seriousness of his offense would ordinarily warrant the Court to consider a sentence at the high end of, or above the recommended guidelines range. A guideline sentence at the lower-end of the range, in this case, a difference of several years—may be sufficient credit for voluntarily disclosing the offense.

## SECTION 3553(a) FACTORS

In this case, considering the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offenses and provide just punishment, and the need to afford adequate deterrence, the government respectfully recommends that a sentence of at least 120 months is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

6

The Sixth Circuit Court of Appeals requires that a district court provide a reasonable explanation of its application of the sentencing factors set forth in Title 18, section 3553 of the United States Code in imposing sentence.  In *Blackwell*, 459 F.3d at 773, the Sixth Circuit announced:

> The job of the district court is to impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)." In reaching a sentence that complies with the purposes of § 3553(a), the district court must consider the Sentencing Guidelines range and all relevant § 3553 factors.  While a district court need not explicitly reference § 3553 or recite a list of factors, it must provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review. . . . This Court will only uphold a sentence if it is reasonable.  Reasonableness contains two facets: substantive and procedural.  In reviewing for reasonableness, the Court employs a presumption for substantive reasonableness.

(Citations omitted.)  *Id.* The Sixth Circuit has stated that, "while a district court need not engage in a 'ritualistic incantation' of the § 3553(a) factors, its reasoning must be 'sufficiently detailed to reflect considerations listed in § 3553(a) and to allow for meaningful appellate review.'" *United States v. Tanner*, 382 F. App'x. 421, 423 (6th Cir. 2010) (*quoting United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) and *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008)).  Therefore, a district court must impose a reasonable sentence while expressing enough of its rationale to permit an appellate court to understand the basis for the sentence imposed.

As the Court considers the sentence to impose, it should consider that Defendant Khan orchestrated a massively complex and long-running scheme to defraud multiple banks and his company's clients for the benefit of his company, his family, and himself.  Based on information provided by the Defendant and the government's investigation, the Defendant managed the massive check-kiting using excel spreadsheets and runners who delivered bundles of checks, on a daily basis, that Khan directed to be deposited in specific intervals. For nearly five years, Najeeb Khan actively planned and directed fraud on a near daily basis.  It was hard work, but it

7

paid well; and Najeeb Khan needed to be paid well.  He was passionate about an exceedingly

expensive hobby—one that required multiple purpose-built hangars to house a collection of

vehicles most people only see in magazines or a child's toy car collection.









These pictures only scratch the surface of the things Defendant stole money to fund; and in the end, others were forced to pay for his lifestyle and hobbies.  The victims capture the damage this fraud wrought on their lives and their businesses.  While some lost a several thousand dollars, other small- and medium-sized businesses lost thousands to tens of thousands of dollars; all of it money the victims had to find and pay again to the IRS and state tax authorities because IOI could not.  The impact on some victims was so profound that company executives resorted to handwriting and mailing payroll checks to employees in multiple states, sometimes for months, just to make sure their people were paid.

The damage and seriousness of this offense are apparent and detailed in the victim impact statements and the PSR.  KeyBank suffered the majority of the loss because the Defendant decided they could take it.  That cold calculus ignores the human impact on bank employees and others that had to deal with the fallout of the fraud.  Imposing a sentence within the range suggested by the guidelines would reflect the seriousness of Khan's offense, promote respect for the law, and provide just punishment.  Only a significant sentence will provide just punishment for his crimes.

Finally, imposing a sentence within the guidelines range would also deter others from exploiting others to enrich themselves.  *United States v. Flores-Machicote*, 706 F.3d 16, 22 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus."); *United States v. Miller*, 484 F.3d 964, 967-68 (8th Cir. 2007) ("general deterrence . . . is one of the key purposes of sentencing . . . ."); *United States v. Jackson*, 835 F.2d 1195, 1199 (7th Cir. 1987) (Posner, J., concurring) ("deterrence is the surest ground for punishment . . . since incapacitation may, by removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal

10

and legitimate activity and who now faces reduced competition in the crime 'market.'").  As courts have noted, deterrence is particularly important in "white-collar crimes, because they are often perceived as carrying substantially lesser punishment than other comparable offenses." *United States v. Panyard*, No. 07-20037-2, 2009 WL 1099257, at *12 (E.D. Mich. April 23, 2009).

Khan's offense was not an isolated incident.  His scheme was rational, calculated and executed carefully to appear to comport with the law.  The Sixth Circuit has acknowledged, ". . . economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."  *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)).  A within guidelines sentence would help dispel that notion and provide general deterrence to others.

## RESTITUTION

Restitution should be ordered against Defendant Najeeb Khan pursuant to 18 U.S.C. § 3663(A)(3) And 18 U.S.C. § 3663a(C).  Restitution orders are authorized by statute, 18 U.S.C. §§ 3663, 3663A, and 3664, and are distinct and separate from the United States Sentencing Guidelines.  When sentencing a defendant convicted of an offense committed by fraud or deceit, the Mandatory Victims Restitution Act (the "MVRA") requires the court to order that the defendant make restitution to the victim of that offense.  18 U.S.C. §§ 3663A(a)(1); 3663A(c)(1)(A)(ii).

Restitution constitutes punishment.  *United States v. Schulte*, 264 F.3d 656 (6th Cir. 2001); *see also United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001) (restitution is "punitive rather than compensatory in nature").  "Although the guidelines mandate imposition of restitution where allowable under the statutes, the restitution statutes function independently

11

from the guidelines and do not rely on the guidelines for their validity." *United States v. Sosebee*, 419 F.3d 451, 462 (6th Cir. 2005). "Restitution under the MVRA is a criminal penalty and a component of the defendant's sentence." *United States v. Adams*, 363 F.3d 363 (5th Cir. 2004) (*quoting United States v. Chaney*, 964 F.2d 437, 451 (5th. Cir. 1992)).

The MVRA specifically states that the amount of restitution should be equal to the "amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (when a court is ordering restitution, the amount of restitution should be equal to the "amount of each victim's losses as determined by the court." *Sosebee*, 419 F.3d at 462 (18 U.S.C. § 3664(f)(1)(A) (emphasis in original)).

Restitution should be made payable by Defendant Najeeb Khan to the victims of his bank fraud in the total amount of $149,672,708.17. The victims of the fraud and their loss amounts are separately listed as an attachment to the PSR; their complete information has been provided to the Probation Office and will be filed under seal as a supplement to this memorandum. Defendant agreed as part of his plea agreement to pay restitution to KeyBank a total of $121,417,215.15 and the IOI clients a total of $27,243,284.40 before any credits are applied due to pre-conviction restitution made by Defendant Khan, through monies recovered by the victims in connection with the consolidated bankruptcy proceedings or otherwise. As of the date of this filing, victim KeyBank has received approximately $27 million in distributions from the Trust. The IOI-client victims have received approximately $17.9 million.

The Court's restitution order need only reference the full amount of the victims' loss amounts and direct that the Defendant receive credit for any amounts already paid to the victims. Because of the ongoing operation of the Trust and potential future distributions to the

victims, the Court's Judgment should order that the Clerk's Office apply any credits to the Defendant's restitution obligation after the Trust makes its final distributions and a final accounting is made to the Bankruptcy Court.  That will ensure the Defendants' restitution obligation is accurate and prevent any windfall or double payment to any victim.  At that time, the Clerk's Office can then distribute any monies recovered by the United States or paid to the Clerk's Office by the Defendant.

The Court should also enter a restitution order payable to the IRS in the amount of $9,880,301.34, which includes the total tax loss and interest.  A chart detailing the government's tax loss and interest calculations is included below.  The Court's Judgment should note that the United States is to receive restitution after all other victims are made whole.

| Year | Filing Date | Reported Income | Corrected Income | Additional Tax Due & Owing | Interest per IRS § 6601 | Total including interest |
|------|-------------|-----------------|------------------|----------------------------|-------------------------|--------------------------|
| 2014 | October 14, 2015 | $282,311 | $4,972,318 | $1,837,959 | $838,883.20 | $2,676,842.82 |
| 2015 | October 14, 2016 | $0 | $3,234,893 | $1,119,916 | $462,209.28 | $1,582,125.28 |
| 2016 | October 15, 2017 | $0 | $8,692,858 | $3,309,373 | $1,182,879.15 | $4,492,252.15 |
| 2017 | October 15, 2018 | $0 | $2,703,873 | $866,076 | $263,005.09 | $1,129,081.09 |

## CONCLUSION

For the foregoing reasons, as well as those to be articulated at the sentencing hearing, the United States respectfully requests that this Court sentence Defendant Najeeb Khan to a term of imprisonment between 121 and 151 months and order him to pay the victims restitution for their losses.

<div style="margin-left: 50%;">

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

</div>

By:  /s/ Alejandro A. Abreu
Alejandro A. Abreu (OH: 0089477)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3620
(216) 522-2403 (facsimile)
Alejandro.A.Abreu@usdoj.gov